On July 30th, 1938, complainant purchased from Sonnell Motors, Inc., a used automobile for a present consideration of $595. It is the custom of the automobile trade for the dealer, on behalf of the purchaser of a car, to submit to the Commissioner of Motor Vehicles the title papers, pay the filing fee (R.S. 39:10-11), and have the registration plates transferred to the new car (R.S. 39:3-30). But it happened that complainant bought the car on a Saturday after the motor vehicle agent's office was closed. So Miller, president of Sonnell Motors, the man with whom complainant was dealing, suggested that he drive the car with the dealer's plates, over the week-end and then bring the car around and Miller would have the plates transferred and deliver the bill of sale to complainant. Accordingly, when complainant returned to town, he called on Sonnell Motors and was told that Miller was out. Complainant called thereafter on several occasions and was put off with one excuse after another, until August 18th, when he found the defendant Rappeport in possession as assignee for the benefit of creditors of Sonnell Motors. From him he learned that the title papers for the automobile which he had bought were in possession of the defendant Bank of Montclair.
Sonnell Motors, on June 24th, a month before the sale to complainant, had borrowed from the bank $435 on a promissory note and had deposited with the bank as collateral security the bill of sale for the automobile. Title, which stood in the name of Sonnell Motors, had not been assigned to the bank. When complainant learned of this situation, he demanded from the bank the bill of sale in order that the assignee, Mr. Rappeport, might assign it to complainant. The bank refused to surrender it unless the note were paid. A year passed in negotiations and then, on July 29th, 1939, complainant instituted this suit in which he prays that the bank be required to surrender up the bill of sale; that Mr. Rappeport, as assignee, be ordered to assign it to complainant and that the bank be decreed to pay complainant damages or compensation for its refusal to deliver the bill of sale.
Without the bill of sale and the assignment, complainant *Page 254 
has been unable to have the car registered in his name or to use the car, so that it has been standing idle in his garage ever since the Monday after he bought it. Of course, it has deteriorated greatly and is now worth only $200.
It is the long-established policy of our state that liens on personal property are void as against bona fide purchasers for value unless the lienor takes possession of the chattel or records his lien. In deference to this policy, counsel for the bank does not argue that the bank has a lien on the automobile. Rather, he puts forward the proposition that the bank has an advantageous dog-in-the-manger position. Without the bill of sale, Sonnell Motors could not give good title to the automobile and an incautious purchaser, as complainant has found out, would be unable to make use of the car. And so the bank hoped the debtor or a purchaser would be impelled to pay the debt.
Our statute, R.S. 39:10-21, expressly requires all dealers to have title papers for all motor vehicles which are in their possession and to produce the papers to the Commissioner upon demand. "If the demand is not complied with or there are no title papers for a motor vehicle in the possession of a dealer," the Commissioner may seize the vehicle and hold it until the papers are forthcoming. See, also, R.S. 39:10-6. Chapter 10 as a whole, shows a clear legislative intent that ownership of motor vehicles should be evidenced by documents; that dealers and perhaps all automobile owners, should at all times have within their control the title papers for their cars. The pledge of the bill of sale whereby the bank took possession and control of the instrument, was contrary to the statute and void. The bank suggests that the pledge of a bill of sale is a common and convenient method of giving security. But our statutes relating to chattel mortgages and especially R.S. 46:28-5.1, provide amply for the use of motor vehicles as security for loans.
The bank argues that the bill should be dismissed because complainant has an adequate remedy at law. The first remedy offered is an action against Sonnell Motors for return of the purchase price. A judgment against that company would have been worthless. It was insolvent to such a degree *Page 255 
that the assignee was able to pay nothing to general creditors. Furthermore, the legal remedy which may move equity to deny relief, is a remedy against the same person from whom relief in equity is sought. 21 C.J. 51. The court will not dismiss the bill against the bank on the ground that complainant has a cause of action against Sonnell Motors. Then is suggested an action against the bank in replevin and for damages for withholding the bill of sale. Such a remedy is not so clear as to result in a dismissal of the bill. Complainant has not legal title to the car since such a title passes only on assignment of the bill of sale, and hence he probably has no right, cognizable in a law court, to possession of the bill of sale.
The bank also contends complainant should be denied relief because he himself has disregarded the statutory plan of transferring automobile titles. This would be sound if complainant had tried to evade the statute. But the contrary appears. Complainant from the start has attempted to get the legal title in the manner prescribed by the statute and has been frustrated solely by the action of the bank.
Complainant's right to consummate his purchase is maintainable in equity in a suit for or in analogy to, specific performance.Gaub v. Mosher, 3 N.J. Mis. R. 605. While the contracting party was Sonnell Motors and not either of the defendants, Sonnell Motors is not interested in the suit. I assume — the point is not argued — that Mr. Rappeport succeeded to the legal title of the automobile by virtue of the general assignment and may pass the title on to complainant. R.S. 2:34.4 and 14.
Specific performance lies against a third party whose interest is subordinate to that of complainant when a decree against such party is necessary to full relief. Krah v. Wassmer, 75 N.J. Eq. 109; 78 N.J. Eq. 305; 58 C.J. 1131. The common instance is where a third party has taken title to land with notice of a contract by his grantor to convey to someone else. McVey v.Baumann, 93 N.J. Eq. 360, 638. The bank will be decreed to surrender the bill of sale, and Mr. Rappeport to execute the assignment.
We come to the question of damages. As a result of the bank's refusal to surrender the bill of sale, complainant has *Page 256 
been deprived of the use of his car and the car has depreciated much in value. While Chancery will not entertain a suit for damages, per se, it often decrees payment of damages or compensation ancillary to an equitable remedy. Or even upon a denial of such other relief. For example: On a bill to restrain the diversion of water, injunction denied and damages awarded, namely, the difference between the value of complainant's land before, and the value after, the diversion. Ingersoll v.Newton, 60 N.J. Eq. 399. A similar case arising from the obstruction of a farm crossing is Speer v. Erie Railroad Co.,68 N.J. Eq. 615.
On a bill for specific performance brought by the vendee, performance denied but a money decree given for the value of improvements put on the land by the vendee. Copper v. Wells,1 N.J. Eq. 10. In a foreclosure suit, unliquidated damages — a fire loss — ascertained and credited on the mortgage. SelrayInv. Co. v. Massimino, 110 N.J. Eq. 300. In vendee's suit for specific performance, vendor charged with interest, or income of the land, or rental value when he was responsible for the delay in consummating the sale. Seymour v. Laverty, 94 N.J. Eq. 430.
Compensation given vendee for defect in title. Peiler v.Levy, 26 N.J. Eq. 330. Keator v. Brown, 57 N.J. Eq. 600;Capstick v. Crane, 66 N.J. Eq. 341. Vendor given compensation for improvements. King v. Ruckman, 24 N.J. Eq. 298, 556.
Vendee given damages for waste and deterioration attributed to vendor. Worrall v. Munn, 38 N.Y. 137. Bright v. James
(R.I.), 67 Atl. Rep. 316; Lynch v. Wright,94 Fed. Rep. 703. In general, see Berry v. Van Winkle, 2 N.J. Eq. 269;Izard v. Mays Landing, c., Co., 31 N.J. Eq. 511, 523; Lyle v.Addicks, 62 N.J. Eq. 123, and Lombardi v. Lombardi
(Conn.), 200 Atl. Rep. 1019.
I think it is settled by these decisions that in a case like the present one, the court should not stop with granting an injunction and send the parties to a law court. The decree should include compensation to complainant for the direct injury in respect to the automobile. The sum of $125 for loss of use and $395 for deterioration will be decreed against the bank. *Page 257